

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/21/2014

| | | |
|---|---|---|
| In re: | § § | |
| Digerati Technologies, Inc., | § § | Case No. 13-33264-H4-11 |
| Debtor. | § § § | Chapter 11 |

### MEMORANDUM OPINION REGARDING MOTION OF RHODES HOLDINGS, LLC AND SCOTT HEPFORD TO DETERMINE AUTHORITY OF INDIVIDUAL CREDITORS TO PURSUE ESTATE CLAIMS
[Doc. No. 325]

### I. INTRODUCTION

The dispute at bar is between Rhodes Holdings, LLC (RH) and Scott Hepford (Hepford) (collectively, the Movants), on the one hand, and Terry Dishon, Sheyenne Hurley, and Hurley Fairview, LLC (collectively, Hurley), and Digerati Technologies, Inc. (the Debtor), on the other. The Court writes this opinion because the relief requested is atypical. The Movants request that this Court grant them standing to prosecute claims on behalf of the Chapter 11 estate against the Debtor's president. There is no provision in the Bankruptcy Code expressly allowing this Court to grant such relief. Furthermore, what scant case law exists suggests that such standing should be granted only in "particularly extraordinary circumstances." This opinion addresses whether "particularly extraordinary circumstances" exist in the case at bar.

The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, as incorporated into Federal Rules of Bankruptcy Procedure 7052 and 9014.[1] To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party. For the reasons set forth herein, this Court denies the Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

1. On May 30, 2013, the Debtor filed its voluntary Chapter 11 petition. [Doc. No. 1].

2. No creditors' committee has been appointed in this case.

3. The relationship between the Movants, on the one hand, and the Debtor and Hurley, on the other, has been extremely acrimonious. The Movants completely mistrust the Debtor's president, Arthur Smith (Smith). According to the Movants, Smith, by signing the Chapter 11 petition, "hijacked" the company, thereby depriving the Movants of their interests in the Debtor and minimizing their chances of recovering their claims against the company.

4. On October 1, 2013, the Movants filed a pleading entitled: "Motion to Determine Authority of Individual Creditors to Pursue Estate Claims" (the Motion). [Doc. No. 325]. The Movants request permission to bring claims, on behalf of the estate, against Smith and others who the Movants believe are in league with Smith. In order to bring these claims, the Movants seek an order from this Court giving them standing to take the necessary steps to allow them to file a lawsuit on behalf of the estate. The Motion does not expressly spell out the specific claims that the Movants want to bring, on behalf of the estate, against Smith and those allegedly in league with him. From prior hearings, however, the Movants complained about actions that Smith took both prior to, and after, the filing of the Debtor's Chapter 11 petition.

5. Hepford has filed neither a proof of claim nor a proof of interest. [*See* Claims Register]. Unlike Hepford, RH timely filed a proof of claim on October 16, 2013 asserting that it is a

2

secured creditor based on a $170,000.00 promissory note dated October 26, 2012. [Claims Register, Claim No. 41]. Despite filing this proof of claim, RH attached no documentation to evidence its claim. [Doc. No. 396-2].

6. On October 22, 2013, Hurley, the largest creditor of the Debtor's estate, filed its response in opposition to the Motion. [Doc. No. 396]. On the same day as Hurley's filing, the Debtor filed its response in opposition to the Motion [Doc. No. 404], which the Debtor then amended the following day. [Doc. No. 405].

7. In their responses, the Debtor and Hurley assert that: 1) the Movants are not creditors of this Chapter 11 estate; (2) the Movants have failed to present a colorable claim against Smith; (3) the Movants have failed to request the Debtor to prosecute this alleged claim against Smith; and (4) the Movants have failed to show how prosecution of this claim would benefit the estate. [Doc. Nos. 396 & 405].

### III. CONCLUSIONS OF LAW

**A.  Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

1. Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it affects the administration of this Chapter 11 estate. Further, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because it affects the debtor-creditor relationship and the equity-holder relationship. Finally, this dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a

substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

2. Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1).

3. Constitutional Authority to Enter a Final Order

*Stern v. Marshall*, 131 S. Ct. 2594 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. This Court must therefore determine whether it has constitutional authority to enter a final order in the dispute at bar. This Court concludes that it does for the following reasons.

In *Stern*, the debtor, pursuant to 28 U.S.C. § 157(b)(2)(C), filed a claim based solely on state law, and the resolution of this counterclaim did not resolve the question of validity of the defendant's claim. 131 S. Ct. 2594, 2601 (2011). Under those circumstances, the Supreme Court held that the bankruptcy court lacked constitutional authority to enter a final order on the debtor's counterclaim. *Id.* at 2606. In the case at bar, the dispute involves no state law whatsoever, but rather involves judicially-created bankruptcy law. Therefore, this dispute is easily distinguishable from the suit in *Stern*, and this Court concludes that there is no *Stern* concern here. Thus, this Court has the constitutional authority to enter a final order on the Motion.

**B. This Court will not grant standing to the Movants to pursue any claims on behalf of the estate because there are no particularly extraordinary circumstances.**

In *City of Farmers Branch v. Pointer (In re Pointer)*, 952 F.2d 82 (5th Cir. 1992), the Fifth Circuit, in assessing whether a creditor could bring an avoidance action under § 549, stated that:

4

> [a]s a rule, individual creditors . . . lack the authority to institute avoidance actions. As indicated, such actions must be instituted by a trustee, debtor-in-possession or, with court approval, by a creditors' committee upon demonstrating that the trustee or debtor-in-possession unjustifiably declines to sue. This is not to suggest that a bankruptcy court can never authorize an avoidance action on behalf of the estate by an individual creditor in a Chapter 11 case. Fair and orderly bankruptcy administration, however, would dictate that such authority might be granted upon showings of <u>particularly extraordinary circumstances.</u>

*Id.* at 88 (emphasis added) (quoting *In re v. Savino Oil & Heating Co.* 91 B.R. 655, 656–57 (Bankr. E.D.N.Y. 1988)).

Although *Pointer* concerned whether a creditor could bring a cause of action arising from *post-petition events*, this Court sees no reason why the analysis should not also apply as to whether a creditor could bring a cause of action arising from *pre-petition events*. Indeed, in *Pointer*, in suggesting that authority might be granted to a creditor, the Fifth Circuit cited certain cases where the claims at stake arose from pre-petition events. *Id.* at 88–89. Accordingly, this Court concludes that it may authorize an individual creditor to prosecute an action on behalf of the estate—regardless of whether it is based on pre-petition events or post-petition events—upon a showing of "particularly extraordinary circumstances."

There is no bright line test for what constitutes "particularly extraordinary circumstances." The phrase nevertheless suggests that the party wanting to bring suit must meet a high burden. *See, e.g., McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) ("We emphasize that the 'extraordinary circumstances' defense carries a highly difficult burden."); *Campos v. Webb Cnty. Tex.*, 288 F.R.D. 134, 136 (S.D. Tex. 2012) ("[T]he moving party carries the substantial burden of showing extraordinary circumstances based on specific facts that would justify such an order.") (quoting *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001)) (internal quotation marks omitted).

With respect to Hepford, the Court, at this point, finds that he cannot satisfy the "particularly extraordinary circumstances" test. He has filed neither a proof of claim nor a proof of interest [Finding of Fact No. 5], and the Debtor has disputed that he has any claim or interest [Doc. No. 41, p. 18; Doc. No. 193, p. 6]; accordingly, under these circumstances, Hepford is not a creditor entitled to receive a distribution in this case. *See* FED. R. BANKR. P. 3003(c)(2) (stating that any creditor who fails to file a timely proof of claim or interest "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution"); *Gaudio v. Stamford Color Photo, Inc. (In re Stamford Color Photo, Inc.)*, 105 B.R. 204, 206 (Bankr. D. Conn. 1989) (noting that failure to timely file a proof of claim eliminates a creditor's right to distribution). If Hepford is unwilling to take the time to timely file a proof of claim or proof of interest so as to establish that he is entitled to a distribution in this case, then this Court is unwilling to make a finding that the circumstances are "particularly extraordinary" to afford him the opportunity to take the necessary steps to be allowed to file a lawsuit on behalf of the estate—an action that presumably would be intended to generate funds for distribution to creditors and interest holders (none of which funds he would be entitled to receive).

Unlike Hepford, RH has filed a proof of claim, and indeed the filing was timely. [Finding of Fact No. 5]. Nevertheless, because RH has failed to attach documentation to its proof of claim, the Debtor correctly notes that RH has failed to fully comply with Bankruptcy Rule 3001(c)(1), which expressly states that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing <u>shall</u> be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or the destruction shall be filed with the claim." (emphasis added). Here, RH's proof of claim expressly represents that it is a secured creditor based upon a promissory note from

6

October 26, 2012. [Claims Register, Claim No. 41]. Yet, no copy of this note is attached to the proof of claim [Finding of Fact No. 5]; nor does RH attach a statement of the circumstances describing the loss or destruction of this note. If RH is unwilling to take the time to fully comply with Bankruptcy Rule 3001(c)(1), then this Court is unwilling to make a finding that the circumstances are "particularly extraordinary" to allow RH to take the necessary steps to be allowed to file a lawsuit on behalf of the Debtor. It is one thing to file a skeletal proof of claim to establish creditor status; it is quite another thing to demonstrate that the act of filing a "bare bones" proof of claim constitutes "particularly extraordinary circumstances" to allow the prosecution of a lawsuit on behalf of the estate.

In sum, this Court concludes that: (1) Hepford, because he has not timely filed a proof of claim or a proof of interest, cannot establish "particularly extraordinary circumstances;" and (2) RH can only begin to establish "particularly extraordinary circumstances" if it takes the time to amend its proof of claim to fully comply with Bankruptcy Rule 3001(c)(1).

Even if RH can amend its proof of claim to fully comply with Bankruptcy Rule 3001(c)(1), it will not mean that RH will have established all of the requirements of the "particularly extraordinary circumstances" test. RH must then satisfy the requirements that the Fifth Circuit set forth in *Louisiana World Exposition v. Federal Ins. Co.*, 864 F.2d 1147 (5th Cir. 1989). This case concerned whether a creditors' committee—as opposed to an individual creditor—could pursue actions on behalf of the estate, but this Court sees no reason why these same requirements should not apply to an individual creditor seeking to pursue claims on behalf of the estate. The Fifth Circuit held that a creditors' committee could obtain standing to pursue an action so long as it satisfied the following conditions: (1) the committee presents a colorable claim for relief that, on appropriate proof, would support a recovery; (2) the committee makes a

7

demand upon the debtor-in-possession to prosecute the claim or claims; (3) the debtor-in-possession unjustifiably fails to bring suit; and (4) after notice and hearing, the committee obtains an order from the bankruptcy court authorizing the committee to prosecute the suit. *Id.* at 1153, n.10.

Thus, assuming that RH can amend its proof of claim to fully comply with Bankruptcy Rule 3001(c)(1), RH must then: (1) draft a proposed complaint on behalf of the estate that contains a colorable claim or claims; (2) send this proposed complaint to counsel for the Debtor; (3) make demand upon counsel for the Debtor to file this complaint within 21 days after transmitting the proposed complaint to counsel for the Debtor;[2] (4) if the Debtor fails to file a complaint by this 21-day deadline, file a motion requesting this Court to authorize RH to file and prosecute the complaint on behalf of the estate; and (5) carry the burden at the hearing on that motion to demonstrate that: (i) there is a probability of legal success and financial recovery if the complaint is prosecuted; (ii) it would be preferable to allow RH to prosecute the complaint rather than appoint a trustee for the entire case; and (iii) the attorneys' fees to be incurred will not outweigh the financial recovery for the estate. *See id.*

## IV. CONCLUSION

In sum, this Court concludes that "particularly extraordinary circumstances" exist for an individual entity[3] to gain standing to sue on behalf of the Chapter 11 estate when all of the following conditions are present: (1) no creditors' committee has been formed; (2) the entity seeking standing to sue holds an undisputed claim or interest or, if disputed, has filed a proof of

---

[2] Because Bankruptcy Local Rule 9013-1(b) affords 21 days for parties to respond to motions, this Court believes it is appropriate to allow the Debtor to make a decision whether to prosecute the proposed complaint within 21 days after receipt of the proposed complaint.

[3] The term "entity" includes a person, and the term "person" includes individuals, partnerships, and corporations. 11 U.S.C. § 101(15) & (41). Thus, this ruling applies to an individual, a partnership, or a corporation.

8

claim or proof of interest that has not been disallowed; (3) the entity seeking standing to sue is itself in complete compliance with the Code and the Rules and does not otherwise have "unclean hands," *see generally Asarco LLC v. Ams. Mining Corp.*, 396 B.R. 278, 333 (S.D. Tex. 2008) (the "unclean hands" doctrine provides that a litigant who engages in reprehensible conduct in relation to a matter in controversy forfeits his right to have the court hear his claim, regardless of its merits); and (4) all of the requirements set forth in *Louisiana World Exposition* are satisfied.

With respect to Hepford, the Court finds that he cannot satisfy the "particularly extraordinary circumstances" test because he has filed neither a proof of claim nor a proof of interest; and thus, he "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." FED. R. BANKR. P. 3003(c)(2). Affording someone, who is neither a creditor nor an equity security holder, the opportunity to prosecute a cause of action on behalf of the estate is unjustifiable: only those who are stakeholders should be allowed to participate in the bankruptcy process. *See e.g., Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 887 (9th Cir. 2012) ("As applied in the Chapter 11 context, Article III standing exists where 'the participant holds a financial stake in the outcome of the proceeding such that the participant has an appropriate incentive to participate in an adversarial form to protect his or her interests.'") (citations omitted).

As for RH, because it has been unwilling to fully adhere to Bankruptcy Rule 3001(c)(1), this Court is loath to find that circumstances are "particularly extraordinary" to allow RH to take the necessary steps to file a lawsuit on behalf of the estate. Unless RH amends its proof of claim to come into complete compliance with Bankruptcy Rule 3001(c)(1), this Court will not allow RH to attempt to take the five steps required by *Louisiana World Exposition* to bring any claims on behalf of the estate.

9

An order consistent with this opinion has already been entered on the docket. [Doc. No. 438].

Date: May 21, 2014

Jeff Bohm
Chief United States Bankruptcy Judge