

IN THE UNITED STATES BANKRUPTCY COURT
FOR SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/27/2014

| | § | |
|---|---|---|
| In re: | § | |
| | § | |
| DIGERATI TECHNOLOGIES, INC., | § | Case No: 13-33264 |
| | § | |
| Debtor. | § | Chapter 11 |

## MEMORANDUM OPINION REGARDING DENIAL OF CONFIRMATION OF THE DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION
[Related to Doc. No. 731]

### I. INTRODUCTION

The Court writes this opinion because it has decided to deny confirmation of a proposed Chapter 11 plan based solely upon a provision about which there is little case law: 11 U.S.C. §1129(a)(5)(A)(ii).[1] This provision sets forth that a proposed plan can be confirmed only if the appointment of those individuals designated to be officers and directors of the reorganized debtor "<u>is consistent</u> with the interests of creditors and equity security holders and <u>with public policy</u>." (emphasis added). In this opinion, this Court reviews what scant case law exists concerning the meaning of "is consistent . . . with public policy" in an effort to develop guidelines for applying this particular provision of the Code.

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

This Court now makes the following Findings of Fact and Conclusions of Law under Bankruptcy Rules 7052 and 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2013, the Debtor filed a Chapter 11 petition. [Doc. No. 1]. Over the next several months, the Debtor filed an initial plan and thereafter some amended plans. [Doc. Nos. 313, 665, & 684]. The "live" plan up for confirmation is the Second Amended and Restated Plan of Organization (the Plan). The Plan proposes that Arthur L. Smith (Smith), the Debtor's CEO, and Antonio Estrada (Estrada), the Debtor's CFO, continue to serve as the only officers and directors of the reorganized Debtor. Smith and Estrada are not only officers of the Debtor; they are also holders of stock in the Debtor and creditors of the Debtor. Further, both served as officers of the Debtor or as directors of the Debtor within two years prior to the filing of the Debtor's Chapter 11 petition.

Further, under the Plan, the Debtor, a publicly-traded company, will be the holding company for an operational subsidiary known as Shift8 Technologies, Inc. (Shift8). The two other operating subsidiaries—Hurley Enterprises, Inc. and Dishon Disposal, Inc.—will be sold.

Thus, Smith and Estrada will serve as officers and directors of a holding company that owns the stock of Shift8.

Recap Marketing & Consulting, LLC and Rainwater Ventures II, Ltd. (the Two Shareholders), both of whom own common stock in the Debtor, filed an objection to confirmation of the Plan. [Doc. No. 694]. Their objection asserts that "[b]ased upon the Debtor's self-dealing, continued employment of Smith and Estrada is not in the best interest of the estate, the creditors, the equity security holders and fails to satisfy public policy." [Doc. No. 699, p. 7, ¶ 9 f].

The Confirmation hearing began on February 5, 2014, and this Court admitted exhibits and heard testimony from Smith. The Court then decided to deny confirmation of the Plan because it became clear that the Debtor could not meet its burden in satisfying the requirement of §1129(a)(5)(A)(ii). *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) (holding that a debtor has the burden of proving all elements of §1129 by a preponderance of the evidence).

### III. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

1. <u>Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

2. <u>Venue</u>

Venue is proper pursuant to 28 U.S.C. § 1408(1).

3. <u>Constitutional Authority to Enter a Final Order</u>

In the wake of the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court, in every dispute brought before it, must inquire as to whether it has the constitutional authority to enter a final order. The threshold question therefore is whether entering an order denying confirmation of a Chapter 11 plan is a final order. Case law is clear that an order denying confirmation of a proposed Chapter 11 plan is **not** a final order. *In re MCORP Fin., Inc.*, 139 B.R. 820, 821-22 (S.D. Tex. 1992); *Phoenix Dev. & Land Inv., LLC v. SCBT, Nat'l Ass'n*, 2012 WL 1309811 *1 (M.D. Ga. 2012). Therefore, this Court concludes that there is no *Stern* concern regarding its entering an order denying confirmation of the Plan.

Assuming that this Court is incorrect and entering an order denying confirmation of a Chapter 11 plan is a final order, this Court nevertheless concludes that it has the authority to

enter an order denying confirmation of the Plan. The facts in the case at bar are easily distinguishable from those in *Stern*. In *Stern*, the debtor, pursuant to 28 U.S.C. § 157(b)(2)(C), filed a counterclaim based solely on state law, and the resolution of this counterclaim did not necessarily resolve the validity or invalidity of the defendant's claim. Under these circumstances, the Supreme Court held that the bankruptcy court lacked constitutional authority to enter a final order on the debtor's counterclaim.

In the case at bar, there is no state law involved. The objection is based upon an express provision of the Code—§ 1129(a)(5)(A)(ii). Thus, this dispute is easily distinguishable from the dispute in *Stern*, and the Court concludes that there is no *Stern* concern here. This Court therefore has the constitutional authority to enter a final order in this matter.

**B. Case Law Regarding § 1129(a)(5)(A)(ii)**

Section 1129(a)(5) sets forth certain requirements that the Debtor must satisfy to confirm the Plan. While the Code defines many words and phrases, the phrase, "consistent with . . . public policy," is not one of them. The absence of a definition necessarily means that bankruptcy courts are left to exercise their sound discretion on the issue. *In the Matter of: Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006) (noting that where there is no definition in the Code, "affords flexibility to the bankruptcy courts"). A review of case law regarding how courts

have exercised their discretion is therefore appropriate in order for this Court to explain why, in the case at bar, the Debtor cannot satisfy § 1129(a)(5)(A)(ii) under the Plan.

1. <u>Cases Where Courts have Denied Confirmation of the Proposed Plan Because the Proponent Has Failed to Satisfy the "Consistent with Public Policy" Requirement of § 1129(a)(5)(A)(ii)</u>

In *In re Beyond.Com Corp.*, 289 B.R. 138 (Bankr. N.D. Cal. 2003), the court denied approval of the debtor's disclosure statement "[b]ecause the underlying plan is patently unconfirmable." *Id.* at 190. One of the patent infirmities of the proposed plan was its failure to satisfy § 1129(a)(5)'s requirement that the proposed post-confirmation's "Liquidation Manager" was consistent with the interests of creditors and equity security holders and with public policy. the court bluntly stated the following: "[c]ontinued service by prior management may be inconsistent with the interests of creditors, equity security holders and public policy if it directly or indirectly perpetuates incompetence, lack of discretion, inexperience or affiliations with groups inimical to the best interests of the debtor." *Id.* at 145.

In *In re Machne Menachem, Inc.,* 304 B.R. 140 (Bankr. M.D. Pa. 2003), the debtor was a not-for-profit corporation organized under the laws of the State of New York. Yaakov Spritzer (Spritzer), a creditor and director of the debtor, proposed a plan; additionally, the debtor filed a competing plan. The creditors rejected the debtor's plan, but Spritzer's plan was accepted by all of its classes. Indeed, the court noted that "[t]he plan has secured the overwhelming support of

6

creditors . . . [and] further enjoys the widespread support of the Hasidic community." *Id.* at 142. Yet, after holding the confirmation hearing, the court denied confirmation of Spritzer's plan. *Id.* It did so solely due to its conclusion that the plan was not consistent with public policy. *Id.*

Rather than focus on § 1129(a)(5), the court focused on § 1123(a)(7). *Id.* This provision requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with <u>public policy</u> with respect to the manner of selection of any officer, director, or trustee under the plan and any successors to such officer, director, or trustee." *Id.* (emphasis added).[2] The court in *Machne* began by reviewing the legislative history regarding the meaning of the term "public policy:"

> The Senate Report accompanying the Chandler Act stated with respect to Section 216(ii) that such provision "directs the scrutiny of the court to the methods by which the management of the reorganized corporation is to be chosen, <u>so as to ensure, for example, adequate representation of those whose investments are involved in the reorganization.</u>"

*Id.* at 142 (emphasis added).

The court then compared the State of New York laws for appointment and removal of a non-profit corporation's directors with the proposed plan's provisions for replacement of the debtor's board and the appointment of the new board. *Id.* at 143. The court concluded that the

---

[2] Given that the language of § 1123(a)(7) tracks closely with the language of § 1129(a)(5)(A)(ii), it necessarily follows that if a plan fails to comply with §1123(a)(7), then the proponent of the plan cannot satisfy § 1129(a)(5)(A)(ii).

7

plan's provisions were not in compliance with the New York statute governing non-profit corporations. *Id.* Accordingly, the court denied confirmation of the proposed plan. *Id.* The court's closing comments are telling:

> I cannot be ambivalent toward the fact that Yaakov Spritzer is a creditor of some magnitude who has shown a willingness and an ability to guarantee and/or fund considerable sums needed to return this camp to solvency. This camp is of noble purpose, offering what appears to be a splendid environment to the children of the Crown Heights, Brooklyn Hasidic community and this plan, having the support of its secured and unsecured creditors as well as its community, stands a legitimate chance of consummation. The expeditious reopening of this camp would certainly be in the public interest.
>
> Notwithstanding, this Court finds that the plan violates 11 U.S.C. § 1123(a)(7), requiring compliance with public policy with regard to selecting and removing directors, and runs afoul of New York Statute.

*Id.* at 144.

Thus, despite the fact that Spritzer's plan had overwhelming support and promoted a huge benefit to the local community, the court concluded that Spritzer could not satisfy the requirement of "consistent with public policy" under § 1129(a)(5)(A)(ii).

2. <u>Cases Where Courts Have Approved Confirmation of the Proposed Plan Because the Proponent Has Satisfied the "Consistent with Public Policy" Requirement of § 1129 (a)(5)(A)(ii)</u>

In *In re WRN 1301, Inc.*, No. 06-41381, 2007 WL 1555812 (Bankr. E.D. Tex. May 24, 2007), the debtor's plan proposed that the existing president would continue to serve in that capacity in the reorganized debtor and that John F. Ramsbacher (the trustee) would serve as the

8

trustee of the liquidating trust. *Id.* at *5. In assessing whether the debtor had satisfied § 1129(a)(5)(A)(ii), the court focused on whether the existing president and the proposed plan trustee were "disinterested persons" under the Code who were qualified to serve in the capacities proposed by the plan. *Id.* The court made a finding that both of these individuals were disinterested persons and that they were both qualified to serve; and thus, the court confirmed the plan. *Id.*

In *In Sentinel Management Group, Inc.*, 398 B.R. 281 (Bankr. N.D. Ill. 2008), the Chapter 11 trustee and the unsecured creditors' committee jointly filed a proposed plan to which objections were lodged. *Id.* at 287. In evaluating whether these plan proponents satisfied § 1129(a)(5)(A)(ii), the court found, in the first instance, that this section did not apply because the debtor would cease to exist post-confirmation, which necessarily meant that no one would be serving as a director, officer, or voting trustee. *Id.* at 308. Alternatively, assuming, *arguendo* that § 1129(a)(5)(A)(ii) did apply, the court found that the composition of the liquidation trust committee was sufficient to serve the interests of all the creditors and, moreover, that the liquidation trust agreement ensured that the interests of creditors and equity security holders would be protected. *Id.* at 307–09. Accordingly, the court found that the appointment of the liquidation trust committee was consistent with public policy and confirmed the plan. *Id.* at 307–09, 321.

In *In re Bashas' Inc.*, 437 B.R. 874 (Bankr. D. Ariz. 2010), the debtors, privately-held corporations, filed a proposed plan to which certain creditors objected. *Id.* at 884. The plan proposed to keep many insiders as officers and board members of the reorganized debtors, but it also included two new independent outside directors. *Id.* at 913. In assessing whether the debtors had satisfied § 1129(a)(5)(A)(ii), the court focused on whether the insiders, who would remain as officers and directors, would be receiving unreasonable salaries given their knowledge of the companies and experience in the business. *Id.* Noting that the officers' salaries had been reduced by 15% from the prior year, the court concluded as follows: "[B]ased upon the size of the companies, their complexities and their revenues, the court concludes that the salaries and benefits paid to [the debtor's] experienced management is not inconsistent with their responsibilities. The sole exception . . . is the salary paid to Edward N. Basha, Jr. however, Mr. Basha agreed to reduce his salary $1 per year for Plan's duration." *Id.* at 913. The court therefore concluded that the debtors had satisfied § 1129(a)(5)(A)(ii), and the court confirmed the plan. *Id.* at 929.

## C. Application of Case Law to the Plan in this Case
### 1. Factors to Consider

Distilling *Beyond.com, Mechne, WRN 1301, Sentinel,* and *Bashas'* leads this Court to conclude that in assessing whether the appointment of an individual to serve as a director or officer of a reorganized debtor is "consistent with public policy," this Court should, at a

10

minimum, consider the following factors, giving appropriate weight to each of them based upon the particular circumstances of the case at bar:

> (1) Does the proposed plan, if confirmed, keep the debtor in existence as an ongoing company or is the debtor extinguished?
> (2) Is the debtor a publicly-held company or a privately-held company?
> (3) Does continued service of the individual perpetuate incompetence, lack of direction, inexperience, or affiliations with groups inimical to the best interests of the debtor?
> (4) Does the continued service of the individual provide adequate representation of all creditors and equity security owners?
> (5) Does the retention of the individual violate state law in any respect?
> (6) Is the individual a "disinterested person"?
> (7) Is the individual capable and competent to serve in the proposed capacity assigned to him?
> (8) Are the salaries and benefits that the individual will receive reasonable based upon the size of the debtor's operations, the complexity of these operations, and the revenues to be generated?
> (9) Are there any new independent outside directors being appointed under the proposed plan?

2. <u>Application of these Factors to the Case at Bar</u>

In the case at bar, the Debtor will survive as a reorganized debtor if this Court confirms the Plan. Essentially, the Debtor will be the holding company for an operational subsidiary known as Shift8 Technologies, Inc. (Shift8), as the two other operating subsidiaries—Hurley Enterprises, Inc. and Dishon Disposal, Inc.—will be sold. Thus, Smith and Estrada will serve as officers and directors of a holding company that owns the stock of Shift8. These circumstances

alone do not seem inconsistent with public policy. At least, they do not violate any Texas statute concerning corporations and the governance thereof.

But, additional facts raise serious issues. First, since 2012, there has been a brutal battle over competing boards as to just who has the authority to make decisions for the Debtor. Smith and Estrada have been on one side of these warring factions, while the Two Shareholders have been on the other side. The Two Shareholders are, without dispute, legitimate holders of the Debtor's stock, and it is disconcerting that under the Plan, the only officers and directors of the post-confirmation Debtor will be the same two individuals who have been on the opposite side of the Two Shareholders. The Plan proposes no new independent outside directors. Therefore, the Two Shareholders have a justifiable concern that Smith and Estrada will not adequately represent their interests as shareholders.

There is more. Article 9.1 of the Plan sets forth that the Debtor assumes the executory contracts set forth in Exhibit 5 attached to the Plan. [Doc. No. 732, p. 43]. A review of Exhibit 5 reflects that the Debtor intends to assume employment agreements with Smith and Estrada. [Doc. No. 732, p. 128]. Indeed, Smith testified about his employment agreement at the confirmation hearing. It is—to put it mildly—a very rich deal for Smith. Section 6(a)(iii) allows Smith, for "good reason," to terminate his employment under a variety of circumstances, many

of which are circumstances he would control as an officer and director of the Debtor.[3] And, by his own testimony, if his employment was terminated, he would be entitled to receive compensation in the range of $700,000 - $1.2 million. This package is unreasonable given that Smith will be the officer and director of a holding company, which will own the stock of one fairly small and fledging company named Shift8.

Additionally, neither Smith nor Estrada are disinterested persons as defined by the Code. Section 101(14) defines a "disinterested person" to be a person that:

(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

Both Smith and Estrada are holders of stock in the Debtor, and creditors of the Debtor, and insiders. *See* §101(31) (defining insider of a corporation to be, *inter alia*, a director or officer or person in control of the debtor). Further, both served as officers of the Debtor or as directors of the Debtor within two years prior to the filing of the Debtor's Chapter 11 petition. Moreover, both have interests materially adverse to the class of equity security holders by reason

---

[3] The same is true for Estrada.

of the very lucrative termination benefits that they themselves could easily trigger once the Plan is confirmed. Their lack of disinterestedness works against a finding that their continuation in their present positions post-confirmation is consistent with public policy—particularly since no new independent officers or directors are being appointed under the Plan.

This Court also has questions regarding Smith's competence. During his testimony, it became clear to this Court that Smith does not understand many of the provisions of the Plan. Indeed, at one point during the hearing when Smith was unable to answer a question about a provision of the Plan, one of the attorneys representing the Debtor informed the Court that he (i.e., the attorney) had listed himself as a witness so that he could give testimony about the Plan's meaning and implementation. While such a trial strategy is not prohibited, it is nevertheless disconcerting that the CEO of the Debtor—who is to be handsomely rewarded monetarily if the Plan is confirmed—cannot satisfactorily explain important provisions of the Plan.

Finally, it is important to note that the Debtor is a publicly-traded company with approximately 6,000 shareholders. It is one thing to appoint solely insiders to serve as officers and directors of a privately-held company where the shareholders are, for example, family members who have served as officers and directors pre-confirmation. It is quite another to appoint solely insiders—in this case Smith and Estrada—to serve as officers and directors of a publicly-held company. This is particularly so when Smith and Estrada have been part of one

14

faction battling another faction (with which the Two Shareholders are aligned) over control of the Debtor since 2012. It is difficult for this Court to find that the appointment of solely Smith and Estrada is "consistent with public policy" when the Debtor is a publicly-held company whose 6,000 shareholders deserve to have at least one independent, disinterested voice helping to guide this corporation into future profitability.

### IV. CONCLUSION

The Two Shareholders have lodged an objection to the Plan, which is meritorious and should be sustained. With respect to Smith and Estrada, the purse is simply too perverse given their overly lucrative employment agreements,[4] their sole control of the Debtor, their lack of disinterestedness, Smith's fundamental lack of understanding the Plan, and the absence of any independent directors. The fact that the Debtor is a publicly-traded company makes it even more difficult for the Debtor to establish that keeping Smith and Estrada on board under the terms proposed in the Plan is consistent with the interests of public policy.

---

[4] This Court has already expressed concern about the lucrative salaries of Smith and Estrada in its order of June 28, 2013: "Finally, there is a third separate and independent reason for denying the Motion with respect to the salaries proposed to be paid to Smith, Estrada, and Keller. The record from the hearing held on June 27, 2013 leaves this Court wondering just what exactly Smith, Estrada, and Keller do for the Debtor that entitled them to very generous salaries. The Debtor is a mere holding company that owns stock in two operating companies. The Court is at a loss to understand how it is beneficial to this Chapter 11 estate for post-petition financing to be approved for the purpose of paying substantial salaries to three persons whose services do not appear to be necessary for the Debtor to reorganize." [Doc. No. 156, p. 7].

Even if the Two Shareholders had not lodged an objection to the Plan, this Court, like the *Machne* court—which was assessing a plan supported by **all** voting classes—would still be concerned about confirming the Plan with respect to § 1129(a)(5)(A)(ii). Indeed, this Court "has a mandatory independent duty to determine whether the [P]lan has met all of the requirements necessary for confirmation." *Williams v. Hibernia Nat'l Bank (In re Williams)*, 850 F.2d 250, 253 (5th Cir. 1988). This duty may well be even more pronounced in the case at bar because there is no unsecured creditors' committee, and the U.S. Trustee has not been actively involved. In exercising its duty, this Court is persuaded that the Debtor cannot satisfy § 1129(a)(5)(A)(ii).

And thus, for the foregoing reasons, this Court denies confirmation of the Plan. An order consistent with this Memorandum Opinion has already been entered on the docket. [Doc. No. 739].

Signed this 27th day of May, 2014.

Jeff Bohm
Chief United States Bankruptcy Judge