

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
05/21/2015

In re: §
§
**DIGERATI TECHNOLOGIES, INC.,** § **Case No. 13-33264**
§ **Chapter 11**
Debtor. §
§

## MEMORANDUM OPINION ON SECURED CREDITORS' MOTION TO STRIKE CERTAIN ITEMS FROM HERRERA'S AMENDED DESIGNATION OF CLERK'S RECORD
[Doc. No. 1104]

### I. INTRODUCTION

The Court writes this Memorandum Opinion because it concerns a Bankruptcy Rule about which there is a dearth of case law. Bankruptcy Rule 8009(e)(1),[1] which became effective on December 1, 2014, requires a bankruptcy court to adjudicate disputes about what items can be designated as part of the record on appeal. This Rule contains no language setting forth any guidelines a court should consider in ruling on such a dispute. This Court now attempts to articulate the appropriate analysis for this Rule. Based this Court's analysis, the Court will strike certain items designated by the appellant in this case.[2]

### II. FINDINGS OF FACT

1. On May 30, 2013, Digerati Technologies, Inc. (the "Debtor") filed a Chapter 11 petition. [Doc. No. 1].

---

[1] Any reference to a "Bankruptcy Rule" refers to the applicable Federal Rule of Bankruptcy Procedure.

[2] On May 8, 2015, the Court orally announced from the bench that it had decided to strike certain items designated by the appellant. The Court now memorializes its ruling in this Memorandum Opinion. This Opinion contains this Court's Findings of Fact and Conclusions of Law, which the Court makes pursuant to Bankruptcy Rules 7052 and 9014. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such. To the extent that any of this Court's written findings and conclusions conflict with this Court's oral findings and conclusions made on the record at the May 8, 2015 hearing, the former shall govern; and to the extent that any of this Court's written findings and conclusions do not encompass all of the oral findings and conclusions, then the latter shall supplement the former.

2. On July 1, 2013, the Debtor filed an Application to Employ Gilbert A. Herrera and Herrera Partners (collectively, "Herrera") as Investment Banker and Request for Expedited Consideration (the "Employment Application"). [Doc. No. 68].

3. On July 10, 2013, this Court held a hearing on the Employment Application.

4. On July 12, 2013, this Court signed and entered an order approving the Employment Application. [Doc. No. 94].

5. On April 4, 2014, this Court confirmed a plan (the "Plan"), and entered an order to that effect. [Doc. Nos. 795 & 795-1]. Article 3.1 of the Plan requires any professional, such as Herrera, to file a fee application within sixty days after entry of the order confirming the Plan, or else be barred from receiving any payment for services rendered.

6. On May 2, 2014—i.e., within 60 days of the entry of the order confirming the Plan— Herrera timely filed his Final Fee Application of Debtor's Investment Banker Gilbert A. Herrera and Herrera Partners for Allowance of Compensation for Services and Reimbursement of Expenses for the Period Beginning July 1, 2013 Through April 4, 2014 (the "Fee Application"). [Doc. No. 826]. The Fee Application requested this Court to award Herrera fees of $476,245.00 and expenses of $7,726.81, for a total amount of $483,971.81.

7. On May 22, 2014, several individuals and entities filed their objection to the Fee Application. [Doc. No. 850].

8. On May 23, 2014, a second group—comprised of Terry Dishon, Hurley Fairview, LLC, and Sheyenne Rae Nelson Hurley (the "Secured Creditors")—filed their own

objection to the Fee Application (the "Secured Creditors' Objection"). [Doc. No. 860].

9.  All parties filed their witness lists and exhibit lists prior to the hearing on the Fee Application. Herrera's witness list indicated that he intended to call the following witnesses: (1) Gilbert A. Herrera; (2) J. Finley Biggerstaff (an associate who works with Herrera); (3) Edward L. Rothberg (the lead counsel who represented the Debtor); and (4) Deirdre Carey Brown (an associate attorney supervised by Mr. Rothberg who also rendered legal services to the Debtor). [Doc. No. 859]. Herrera's exhibit list set forth that he intended to introduce four exhibits. [*Id.*]. This exhibit list reflected that he intended to introduce the following exhibits: (1) Herrera's Final Fee Application, [Doc. No. 826]; (2) Exhibits to Herrera's Final Fee Application, [Doc. No. 826-1]; (3) Notice of Final Fee Application, [Doc. No. 828]; and (4) Certificate of Service, [Doc. No. 829]. [*Id.*].

10.  This Court held a multi-day hearing on the Fee Application. Specifically, this Court held hearings on the following dates: July 22, 2014; August 18, 2014; August 20, 2014; September 9, 2014; October 1, 2014; October 14, 2014; and November 7, 2014.[3]   Throughout this multi-day hearing, Herrera was represented by Keavin McDonald ("McDonald"), a seasoned lawyer who has frequently appeared in bankruptcy court.

11.  During this multi-day hearing, McDonald adduced testimony from Gilbert Herrera and another witness, Vess Hurley. On behalf of Herrera, McDonald introduced five exhibits into the record. Specifically, McDonald introduced the four exhibits that he

---

[3] The Court intended to begin the hearing on May 27, 2014, but because exhibits had not been timely exchanged under the applicable local rule, the Court actually began hearing testimony and admitting exhibits on July 22, 2014.

had described in the exhibit list that he filed prior to the beginning of the hearing on the Fee Application (all of which were pleadings on the docket). He also introduced one additional exhibit (which was not a pleading). Further, those parties objecting to the Fee Application, including the Secured Creditors, introduced a total of twenty-five exhibits, with the Secured Creditors introducing fifteen exhibits and the other objecting creditors introducing ten exhibits.

12. On November 7, 2014, this Court heard closing arguments from all counsel, and then took the matter under advisement.

13. On January 12, 2015, this Court issued a Memorandum Opinion setting forth its reasons for denying the Fee Application in its entirety (the "Fee Application Opinion"). [Doc. No. 1056].

14. On January 12, 2015, this Court entered an order on the docket denying the Fee Application in its entirety (the "Fee Application Order"). [Doc. No. 1057].

15. On January 23, 2015, Herrera filed a Notice of Appeal of the Fee Application Order. [Doc. No. 1069]. This Notice of Appeal was filed *not* by McDonald, but rather by R. Alan York of the law firm of Godwin Lewis P.C. [Doc. No. 1068]. Thus, for prosecuting the appeal of the Fee Application Order, Herrera decided to replace McDonald with the Godwin Lewis firm.

16. On January 29, 2015, Herrera filed an Amended Notice of Appeal of the Fee Application Order. [Doc. No. 1076].

17. On February 6, 2015, Herrera filed a Statement of Issues on Appeal. [Doc. No. 1080].

18. On February 6, 2015, Herrera also filed his Appellant Designation of Contents for Inclusion in Record on Appeal (the "Designation") and designated 189 items for inclusion in the record on appeal. [Doc. No. 1081].

19. After Herrera filed his Designation, the Secured Creditors and Herrera participated in several discussions in an attempt to reach an agreement regarding the items to be designated for the record on appeal. [*see* Doc. Nos. 1095 & 1104].

20. As a result of such discussions, on February 20, 2015, Herrera filed his Amended Designation of Clerk's Record (the "Amended Designation") and reduced the designated items from 189 items to 150 items. [Doc. No. 1095].

21. On March 4, 2015, the Secured Creditors filed their Motion to Strike Certain Items From Herrera's Amended Designation of Clerk's Record (the "Motion to Strike"). [Doc. No. 1104]. The Secured Creditors objected to 77 of the 150 items designated by Herrera. [*Id.*].

22. On March 25, 2015, Herrera filed a response in opposition to the Motion to Strike. [Doc. No. 1118].

23. On April 16, 2015, this Court held a hearing on the Motion to Strike and Herrera's response thereto. Although this Court gave them the opportunity to do so, neither the Secured Creditors nor Herrera adduced any testimony or introduced any exhibits in support of, or in opposition to, the Motion to Strike. Rather, counsel for each of the parties chose to make only oral argument. The Court then requested further briefing by counsel regarding certain issues raised in oral argument, and continued the hearing until May 8, 2015.

24. Following the April 16, 2015 hearing, Herrera and the Secured Creditors engaged in more discussion to which point Herrera agreed to remove an additional 17 items from his Amended Designation. [Doc. No. 1129]. The 60 items to which the Secured Creditors now object (the "60 Items") are set forth in **Exhibit A** attached hereto.

25. On April 24, 2015, the Secured Creditors filed their Brief in Support of the Motion to Strike. [Doc. No. 1130].

26. On April 24, 2015, Herrera also filed his supplemental brief in support of his response opposing the Motion to Strike. [Doc. No. 1129].

27. On May 8, 2015, this Court held a hearing and announced orally from the bench that after reviewing the legal authorities submitted by the parties, and further considering the oral arguments of counsel made at the April 16, 2015 hearing, the Court had decided to grant the Motion to Strike. The Court now issues this Memorandum Opinion to memorialize its oral ruling.

## III. CONCLUSIONS OF LAW

**A.   Jurisdiction, Venue, and Constitutional Authority to Sign a Final Order**

1.   Jurisdiction

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns the designation of the record on the appeal of the Fee Application Order, and the Fee Application Order concerns the administration of this Chapter 11 estate. *In re Age Refining, Inc.*, 505 B.R. 447, 449 (Bankr. W.D. Tex. 2014) ("This Court has jurisdiction to rule on the Fee Application. Fee applications and administrative expenses are generally core matters within a bankruptcy court's jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (O) and 1334."). Further, this

dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) because it involves the allowance or disallowance of claims against the estate—namely, Herrera's claim for $483,971.81. Additionally, it is core pursuant to 28 U.S.C. § 157(b)(2)(O) because it involves the adjustment of the debtor-creditor relationship—namely, whether or not Herrera is a creditor entitled to payment under the Plan. Finally, it is core pursuant to the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance."). Here, the dispute concerns Herrera's designation of items for his appeal of the Fee Application Order—which could only have arisen in the context of the Debtor's Chapter 11 case.

2.    Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1).

3.    Constitutional Authority to Enter a Final Order

In the wake of the Supreme Court's issuance of its opinion in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute brought before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The

particular dispute at bar is governed solely by Bankruptcy Rule 8009. There is no state law involved whatsoever. Thus, because the facts in the dispute at bar are easily distinguishable from those in *Stern*—especially the fact that only bankruptcy law governs this dispute—this Court concludes that it has the constitutional authority to enter a final order on the Motion to Strike.

**B.     Bankruptcy Rule 8009(e)(1) Governs This Dispute**

Bankruptcy Rule 8009(e)(1) sets forth that:

> If any difference arises about whether the record accurately discloses what occurred in the bankruptcy court, the difference must be submitted to and settled by the bankruptcy court and the record confirmed accordingly. If an item has been improperly designated as part of the record on appeal, a party may move to strike that item.

The above-referenced language leaves no doubt that any dispute over designation of items must be adjudicated by the bankruptcy court, and not the district court to which the appeal has been assigned.[4] Here, the Secured Creditors, by filing the Motion to Strike, want this Court to strike the 60 Items that Herrera has designated. [Findings of Fact Nos. 21 & 24]. Thus, there is no question that Rule 8009(e)(1) governs this dispute; and that it is the undersigned bankruptcy judge—not the district judge to whom the appeal of the Fee Application Order has been assigned—who must resolve this dispute. Bankruptcy Rule 8009, however, is fairly new, having become effective on December 1, 2014. There is no case law at this point interpreting this new rule. For example, Rule 8009(e)(1) does not set forth the circumstances describing when an item has been "improperly designated" or what analysis should be done in making this determination. Therefore, this Court will look to case law interpreting the predecessor to Rule 8009.

---

[4] Prior to the enactment of Rule 8009, the courts were split over whether a bankruptcy court—as opposed to a district court—could even resolve disputes over designation of items for an appeal. *See In re Adkins*, No. 12-10314, 2014 WL 5801679, *2–3 (Bankr. N.D. Tex. Nov. 7, 2014) (providing a thorough review of the competing views regarding this issue). The passage of Rule 8009 has resolved this issue.

C.    **History of Rule 8009's Predecessor**

Prior to December 1, 2014, Bankruptcy Rule 8006 governed designation of items to be included on the record on appeal. Bankruptcy Rule 8006, unlike its successor (i.e., Rule 8009), contained no subsections and read *in toto* as follows:

> Within 14 days after filing the notice of appeal as provided by Rule 8001(a), entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Within 14 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal and, if the appellee has filed a cross appeal, the appellee as cross appellant shall file and serve a statement of the issues to be presented on the cross appeal and a designation of additional items to be included in the record. A cross appellee may, within 14 days of service of the cross appellant's statement, file and serve on the cross appellant a designation of additional items to be included in the record. The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court. Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated or, if the party fails to provide the copy, the clerk shall prepare the copy at the party's expense. If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost. All parties shall take any other action necessary to enable the clerk to assemble and transmit the record.

A review of the above-referenced language reveals that Rule 8006—just like Rule 8009—contained no express guidelines as to how disputes over designation of items for an appeal should be resolved. Case law, however, articulated certain parameters.

1.    Opinions from the Fifth Circuit

In *Zer-Ilan v. Frankford (In re CPDC, Inc.)*, 337 F.3d 436 (5th Cir. 2003), the Fifth Circuit, *sua sponte*, held that the district court erred in allowing the appellant to supplement the record with documents and testimony that were not offered and admitted before the bankruptcy

court. Citing to former Bankruptcy Rule 8006, the Fifth Circuit stated that this rule,

> [P]rovides that the record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance. The rule does not permit items to be added to the record on appeal to the district if they were not part of the record before the bankruptcy court . . . . Thus, we will not consider such untimely-submitted evidence in evaluating [the appellant's] argument.

*Id.* at 443.

The Fifth Circuit applied this very hard-and-fast rule again in *In re SI Restructuring Inc.*, 480 Fed. Appx. 327 (5th Cir. 2012). In this case, the bankruptcy court granted a motion to strike designated documents on the grounds that they were not admitted at the hearing held by the bankruptcy court. *Id.* at 328. The losing parties then appealed, and the district court affirmed the bankruptcy court's ruling. The losing parties thereafter appealed to the Fifth Circuit, which affirmed the district court's ruling by citing to Rule 8006:

> Rule 8006 provides that the record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance. The rule does not permit items to be added to the record on appeal to the district court if they were not part of the record before the bankruptcy court.

*Id.* at 328–29.

In *Mehta v. Havis (In re Shah)*, 204 Fed. Appx. 357, 359 (5th Cir. 2006), the Fifth Circuit suggested that there were two exceptions to the otherwise inflexible rule articulated in *CPDC* and *SI Restructuring*. In *Shah*, the district court struck certain record designations made by the appellant, and the appellant appealed. The Fifth Circuit affirmed the district court's ruling by holding that:

> It is uncontested that the documents [the appellant] sought to designate were not introduced as evidence before the bankruptcy court. *[The appellant] does not offer reasons for his failure to provide these documents in the bankruptcy hearing nor does he offer any explanation as to how his case is prejudiced by their exclusion.* In short, the district court

did not err in refusing to permit [the appellant] to designate documents for appellate review that were never considered by the bankruptcy court.

*Id.* (emphasis added).

Thus, in *Shah*, the Fifth Circuit seemed to open the door for a party on appeal to designate items not introduced as evidence before the bankruptcy court if that party could (1) justify his failure for introducing those documents at the bankruptcy hearing; or (2) demonstrate that excluding them on appeal would prejudice the party.

This Court notes that all three of the above-referenced Fifth Circuit opinions concern documents that were not pleadings on the docket, but rather were materials (such as letters or emails) that should have been introduced as exhibits at the hearings in the bankruptcy court. The Court makes this point because in the case at bar, all of the 60 Items are either pleadings that have been docketed in the Debtor's main case, pleadings that have been docketed in various adversary proceedings instituted in the Debtor's Chapter 11 case, transcripts of other hearings in the main case, or minute entries on the docket sheet. Herrera contends that this difference is important, and argues that the hard-and-fast rule articulated by the Fifth Circuit is inapplicable when the items being designated are pleadings on the docket in the main case and on the docket in adversary proceedings filed in the Debtor's case, and minute entries on the docket. Herrera contends that in order to give the appellate court an overview of the entire Chapter 11 case of the Debtor, he (or any other appellant) has the unfettered right to designate any pleading or minute entry that is on the docket in the main case or on the docket in any adversary proceeding filed in this Chapter 11 case. Based upon the case law discussed below, this Court disagrees.

2. Opinions from Lower Courts Within the Fifth Circuit

In *Adkins*, the bankruptcy court for the Northern District of Texas was confronted with a fact pattern similar to the one in the case at bar. *See* 2014 WL 5801679, at 1–2. In *Adkins*, the

appellant designated primarily pleadings filed in Mr. Adkins' case after the bankruptcy court's ruling, or pleadings filed in other cases and adversary proceedings, and the appellee filed a motion to strike these items. *Id.* at *1. The appellant argued that these designated items are "part and parcel of the appellate process and their inclusion will result in a more compete [sic] and understandable appellate record[;]" and he further argued that these items needed to be designated because "[i]t would be wrong to ask the court of appeals to consider the matters being appealed in a vacuum . . . ." *Id.*

The bankruptcy court began its analysis by citing the Fifth Circuit's bright line test from *CPDC* and *SI Restructuring* as if to telegraph that this language alone required striking the designated items. *Id.* But then, the bankruptcy court, citing an opinion from a district court in Louisiana—*In re Heitmeier*, No. 13-6787, 2014 WL 1513886, at *1 (E.D. La. Apr. 16, 2014)— made the following statement: "The items need not be formally entered into evidence, but should be of record and available for consideration by the bankruptcy court when it renders its decision." *Id.* (citation omitted). The bankruptcy court further stated that, "[i]f an item was not available for consideration by the bankruptcy court in making its determination, then it should be stricken." *Id.* Thus, the bankruptcy court focused on whether the designated items in dispute—all of which were pleadings (as opposed to documents such as emails or letters)—were available for consideration by the bankruptcy court at the time it rendered its decision. [*Id.* at *1–2.] The bankruptcy judge was unconcerned that these items were not entered into evidence during the hearing during the bankruptcy court. [*Id.*].

*Adkins* thus seems to have relaxed the Fifth Circuit's hard-and-fast rule that the items must be formally entered into evidence to be designated for appeal. According to the court in *Adkins*, if the designated items are pleadings, as opposed to actual documents (such as letters or

emails), then it is not required that these pleadings have been formally entered into evidence, but rather only that: (1) they have been entered on the docket in the main case presided over by the bankruptcy court; and (2) are available to the bankruptcy court during the time leading up to the court's decision. The court in *Adkins* went on to strike the designated pleadings because these pleadings had been entered on the docket **after** the court's ruling or had been entered in other cases and other adversary proceedings. *Id.* at *2. But, if these designated pleadings had been entered on the docket in Mr. Adkins' main case **prior** to the court's ruling, then it appears that the bankruptcy court would not have stricken these designated items.

This result, however, seems to contradict another statement made in *Adkins*, to wit: "The appropriate standard is not whether the designated items will give the appellate court the same bird's eye view that the bankruptcy court had." *Id.* This statement would suggest that a party on appeal cannot simply designate any items on the debtor's main case docket merely to provide the appellate court with a "historical context and factual background" to the entire bankruptcy case.

The opinion cited by *Adkins*—*Heitmeier*—confirms this last point. The district court in that case unequivocally stated that:

> The designation of items should contain all documents necessary to afford a full understanding of the case. In particular, the appellate record should contain all documents and evidence bearing on the proceedings below and considered by the Bankruptcy Judge in reaching his decision. Items not before the Bankruptcy Court and *not considered by it* in rendering its decision may not be included in the record.

*Heitmeier*, 2014 WL 1513886, at *1. (internal citations omitted) (emphasis added).

Other courts applying former Rule 8006 agree with the view that although pleadings do not need to be introduced into evidence to be subsequently designated for appeal, they can only be designated if the bankruptcy court actually considered these pleadings in rendering its ruling.

*See, e.g.*, *In re Chateaugay Corp.*, 64 B.R. 990, 995 (S.D.N.Y. 1986) (The district court, in applying Bankruptcy Rule 8006, found that this Rule had been construed to mean that "the record on appeal should contain all documents and evidence bearing on the proceeding below *and considered by the bankruptcy judge in reaching his decision*"); *In re Neshaminy Office Building Associates*, 62 B.R. 798, 802 (E.D. Pa. 1986).

**D.    The Analysis that Should be Done Under Rule 8009(e)(1) Based Upon Case Law's Application of Former Rule 8006**

Distilling the holdings in the above-referenced cases applying former Rule 8006 leads this Court to conclude that it should conduct the following analysis in now applying Rule 8009(e)(1) to the dispute at bar, where the 60 Items in dispute are solely pleadings and minute entries in this Chapter 11 case:

> (1) Were any or all of the 60 Items actually admitted into the trial record at the multi-day hearing on the Fee Application? *See CPDC*, 337 F.3d at 436; *SI Restructuring*, 480 Fed. Appx. at 328−29;
>
> (2) Even if the 60 Items were not made part of the trial record at the hearing on the Fee Application, did the undersigned judge consider any of these items in reaching the decision to deny the Fee Application in its entirety? *See Heitmeier*, 2014 WL 1513886, at *1; *Chateaugay*, 64 B.R. at 995;
>
> (3) Even if the undersigned judge did not consider any of the 60 Items in reaching his decision, has Herrera offered any reason for his failure to introduce these items into the record at the hearing on the Fee Application? *See Shah*, 204 Fed. Appx. at 359; and
>
> (4) Even if Herrera has not offered any reason for his failure to introduce the 60 Items into the trial record, has Herrera offered any explanation as to how his appeal of the Fee Application Order is prejudiced if the 60 Items are stricken? *Id.*

The analysis set forth above leads this Court to conclude that it should grant the Motion to Strike. First, a review of the record made at the multi-day hearing on the Fee Application reflects that the trial record comprises the following: (1) the Fee Application, [Doc. No. 826]; (2)

14

the first group's objection to the Fee Application, [Doc. No. 850]; (3) the Secured Creditors' Objection, [Doc. No. 860]; (4) the testimony of Gilbert Herrera; (5) the testimony of Vess Hurley; (6) the fifteen exhibits introduced by the Secured Creditors, [Finding of Fact No. 11]; (7) the ten exhibits introduced by other parties objecting to the Fee Application, [*Id.*]; and (8) the five exhibits introduced by Herrera, [*Id.*], (the "<u>Trial Record</u>"). The Trial Record does not contain any of the 60 Items. Because the Trial Record does not comprise any of the 60 Items, this Court finds that it should strike all of the 60 Items, unless: (a) this Court itself relied upon any or all of the 60 Items in issuing its ruling denying the Fee Application; (b) Herrera can offer an explanation as to why his attorney at the time, McDonald, failed to introduce the 60 Items into the Trial Record; or (c) Herrera can show that his appeal of the Fee Application Order would now be prejudiced by this Court's striking of the 60 Items.

Did this Court rely upon any of the 60 Items in denying the Fee Application? The undersigned judge has reviewed its Fee Application Opinion to determine if it references any of the 60 Items. The Fee Application Opinion does not reference any of the 60 Items. Rather, this Court made its ruling based upon: (1) the sources cited in the Fee Application Opinion, which include the Trial Record and a few pleadings on the main case docket which Herrera has not designated; and (2) several pleadings on the docket which Herrera has designated but to which the Secured Creditors have no objection. Thus, all of the 60 Items must be stricken unless: (1) Herrera can explain why McDonald failed to make them part of the Trial Record; or (2) Herrera can show that striking the 60 Items will prejudice his appeal.

Why did McDonald fail to introduce the 60 Items into the record during the multi-day hearing on the Fee Application? At the hearing on the Motion to Strike, Herrera failed to introduce any evidence on this issue. He could have, for example, called McDonald to the

witness stand and adduced testimony to the effect that McDonald intended to introduce the 60 Items into the Trial Record, but failed to do so because of some plausible explanation.[5] However, no such testimony was adduced. Herrera bears the burden of persuasion on this issue, and he has failed to meet it. *In re Ames Dep't Stores, Inc.*, 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005) (in applying former Rule 8006, the court notes that the party seeking to expand the record on appeal has the burden of persuasion).

Is Herrera prejudiced if the 60 Items are stricken? There is no proof of any such prejudice. At the hearing on the Motion to Strike, this Court expressly inquired whether any party wanted to adduce testimony or introduce exhibits. [Finding of Fact No. 23]. None did. It is Herrera's burden to show prejudice, *Shah*, 204 Fed. Appx. at 359, and because he failed to do so, this Court has no basis to refuse to strike the 60 Items. *Id.*

The Court also notes that Herrera's retention of new counsel—retaining the Godwin Lewis firm to handle the appeal instead of keeping McDonald for this task, [Finding of Fact No. 15]—should <u>not</u> be made part of any consideration as to whether Herrera is prejudiced if the 60 Items are stricken. There is no question that the Godwin Lewis firm did not attend the multi-day hearing on the Fee Application—and therefore does not have the same level of participation or knowledge at this point as do the attorneys for the Secured Creditors and the other objecting parties. But, this fact is no basis for allowing the Godwin Lewis firm to now designate the 60 Items on the grounds that it wants to provide the appellate court with a "historical context and factual background" to the Debtor's Chapter 11 case. [*see* Doc. No. 1118, p. 5 of 13]. As the court in *Adkins* stated: "The appropriate standard is not whether the designated items will give

---

[5] It is worth noting that at the hearing on the Fee Application, four out of five exhibits that Herrera introduced were pleadings that had been docketed in the main case. [Finding of Fact No. 11]. So, there is no question that at the Fee Application hearing, Herrera knew that he could introduce as exhibits any pleadings that had been docketed by that time.

the appellate court the same bird's eye view that the bankruptcy court had." *Adkins*, 2014 WL 5801679, at *2. If Herrera wanted to provide an appellate court with such context or background, he should have introduced evidence to do so during the multi-day hearing on the Fee Application. Indeed, he in fact introduced four docketed pleadings as exhibits at this hearing, [Finding of Fact No. 11; *see also* Finding of Fact No. 9], and he could have attempted to introduce any or all of the 60 Items then; he should not be allowed to do so now.

The Court also notes that the Secured Creditors would themselves be prejudiced if this Court refused to strike the 60 Items. First, Herrera wants to designate certain items relating to the final fee application of the law firm that represented the Debtor (i.e., Hoover Slovacek, LLP),[6] but the Secured Creditors point out that they were not participants at that hearing because they did not object to that particular fee application; and therefore, they had no way to object to their introduction into the record then to any of the items that Herrera now wants to designate in the dispute at bar. [Doc. No. 1130, p. 2]. Thus, this Court agrees that it is prejudicial to the Secured Creditors to allow Herrera to designate items relating to a hearing on a different fee application that only Herrera, and not the Secured Creditors, participated in.

Further, this Court notes that the hearing on the Fee Application occurred on several days over several months. [Finding of Fact No. 10]. Herrera and his very seasoned attorney at the time, McDonald, had plenty of time to prepare and assess what evidence to introduce. [*see id.*]. Now that the matter is on appeal, and Herrera has switched attorneys, it would be unfair to the Secured Creditors to allow Herrera's new counsel to designate items that McDonald had ample time himself to introduce into the record at the hearing on the Fee Application. In a very real sense, Herrera is now attempting to have "two bites at the apple," and this Court refuses to let

---

[6] Herrera has designated the following docket numbers which relate to the final fee application of Hoover Slovacek LLP: 406; 658; 855; 874. These four items are part of the 60 Items described on the list attached hereto as **Exhibit A** (i.e., the items designated by Herrera to which the Secured Creditors object).

him now bite off more than he originally chewed at the hearing on the Fee Application.

In sum, this Court finds that the 60 Items set forth in **Exhibit A** should be stricken because: (1) Herrera failed to introduce them as exhibits at the hearing on the Fee Application; (2) this Court did not consider them in issuing its ruling denying the Fee Application; (3) Herrera has failed to meet his burden to explain why he did not introduce them as exhibits at the hearing on the Fee Application; (4) Herrera has failed to meet his burden to show how striking the 60 Items would prejudice his appeal; and (5) the Secured Creditors would be prejudiced if the 60 Items are not stricken.

### E.  Bankruptcy Rule 8009(e)(2) does not Apply to the Dispute at Bar

Herrera also cites Bankruptcy Rule 8009(e)(2)—as opposed to (e)(1)—in support of his contention that the Motion to Strike should be denied. [*see* Doc. No. 1129, p. 5]. This Court disagrees that Rule 8009(e)(2) applies.

Rule 8009(e)(2) reads as follows:

> If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected, and a supplemented record may be certified and transmitted:
> (A) on stipulation of the parties;
> (B) by the bankruptcy court before or after the record has been forwarded; or
> (C) by the court where the appeal is pending.

As the language above reflects, for Rule 8009(e)(2) to be applicable, the designated items in dispute must be *material* **and** they must have been omitted *by error or accident*. Herrera has neither pleaded nor argued how the 60 Items are material or that McDonald (when representing Herrera at the multi-day hearing on the Fee Application) failed to introduce the 60 Items into the Trial Record due to error or accident. And, even if Herrera is now pleading or arguing materiality, error and accident, he failed to introduce any evidence to establish these

circumstances at the hearing on the Motion to Strike. Indeed, as already noted, at the beginning of the hearing on the Motion to Strike, this Court expressly inquired of all attorneys whether they, on behalf of their respective clients, wanted to adduce testimony or introduce exhibits in support of, or in opposition to, the Motion to Strike. [Finding of Fact No. 23]. All counsel, including Herrera's counsel (i.e., R. Alan York), chose not to do so. [*Id.*]. Thus, even if Rule 8009(e)(2) is applicable to the dispute at bar, Herrera has failed to meet his burden of establishing the materiality of the 60 Items and also showing that the 60 Items were not made part of the Trial Record by McDonald due to his error or some accident.

## IV. CONCLUSION

Herrera filed the Fee Application, and this Court afforded him ample opportunity to adduce testimony and introduce exhibits in order to satisfy his burden. Indeed, this Court afforded Herrera several days of courtroom time to put on his case-in-chief and to adduce testimony and introduce exhibits in support of the Fee Application. Herrera could have called more witnesses—in fact, the witness list that he filed indicated that he intended to call more witnesses than he actually did, [Finding of Fact No. 9]—but he chose not to do so, [Finding of Fact No. 11]. He could have introduced more than the five exhibits that he did, but he chose not to do so. [*Id.*]. Herrera's attorney at the Fee Application hearing, McDonald, is a seasoned attorney who knows how to make a record. [*see* Finding of Fact No. 10]. Herrera should not now be allowed to change attorneys and expand the Trial Record that his first attorney (McDonald) made at the multi-day hearing on the Fee Application. Stated differently, Herrera should not be allowed to do an "end run" around the rules which govern both the trial and appellate process.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this 21st day of May, 2015.

Jeff Bohm
United States Bankruptcy Judge

# EXHIBIT A

## 60 Items Designated to which the Secured Creditors Object and will NOT be Included in the Record on Appeal

| Date | Court's Pacer Docket Number | Document Description |
|------|------|------|
| | | |
| 05/30/2013 | 1 | Chapter 11 Voluntary Petition. |
| 06/04/2013 | 4 | Adversary Case 13-03118. Nature of Suit: (01(Determination of removed claim or cause)). Notice of removal Digerati Technologies, Inc. |
| 06/04/2013 | 5 | Adversary Case 13-03119. Nature of Suit: (01(Determination of removed claim or cause)). Notice of Removal Robert L. Sonfield, Jr. P.C. |
| 06/06/2013 | 13 | Adversary Case 13-03121. Nature of Suit: (01(Determination of removed claim or cause)). Notice of Removal on behalf of Rhodes Holdings, LLC against MCI Partners, LLC, Terry Dunken Jr. |
| 06/07/2013 | 18 | 20 Largest Unsecured Creditors. |
| 06/26/2013 | 53 | Statement of Financial Affairs. |
| 06/28/2013 | 63 | Order Denying the Debtor's Emergency Motion for Authority to Incur Debt Under 11 U.S.C. Section 364(c) and Section 105. |
| 07/03/2013 | 74 | Motion for Authority to Obtain Credit Under Section 364(b), Rule 4001(c) or (d). |
| 07/09/2013 | 83 | Objection to Application to Employ, filed by Rhodes Holdings, LLC. |
| 08/05/2013 | 182 | Transcript RE: Chapter 11 Status Conference: Application to Employ Counsel for Debtor-in-Possession; and Emergency motion for Authority to Incur Debt held on June 27, 2013. |
| 08/07/2013 | 194 | Amended Statement of Financial Affairs. |
| 09/27/2013 | 313 | Chapter 11 Plan of Reorganization Filed by Digerati Technologies, Inc. |
| 09/27/2013 | 314 | Disclosure Statement Filed by Digerati Technologies, Inc. |
| 10/01/2013 | 325 | Motion to Determine Authority of Individual Creditors to Pursue Estate Claims Filed by Interested Party Scott Hepford, Creditor Rhodes, Holdings, LLC |
| 10/02/2013 | | Courtroom Minutes—Transcript Requested, *see* Rec. Doc. 1083 |
| 10/22/2013 | 396 | Opposition Response to Motion to Determine Authority of Individual Creditors to Pursue Estate Claims. |
| 10/23/2013 | 406 | Order Approving in part, Denying in part the First Interim Fee Application of Debtor's Counsel Hoover |

1                                                        Exhibit A

| | | Slovacek, LLP for Allowance of Compensation for Services and Reimbursement of Expenses for the Period Beginning May 30, 2013 Through August 31, 2013. |
|---|---|---|
| 10/23/2013 | 418 | Order Extending Exclusivity Period Signed on 10/23/2013. |
| 10/25/2013 | 428 | Additional attachments Re: Supplement to Proposed Disclosure Statement Under 11 U.S.C. Section 1125 ("Exhibit A") and Bankruptcy Rule 3016 in Support of Plan of Reorganization of Debtor dated September 27, 2013. |
| 10/29/2013 | 434 | Additional attachments Re: Amended Supplement to Proposed Disclosure Statement Under 11 U.S.C. § 1125 ("Exhibit A") and Bankruptcy Rule 3016 in Support of Plan of Reorganization of Debtor dated September 27, 2013. |
| 11/01/2013 | 438 | Order Regarding Motion of Rhodes Holdings, LLC and Scott Hepford to Determine Authority of Individual Creditors to Pursue Estate Claims. |
| 11/05/2013 | 451 | Order Regarding Discovery to be conducted in Conjunction with this Chapter 11 Case. |
| 11/05/2013 | 453 | Statement (Filed By Scott Hepford, William McIlwain, Robert C Rhodes, Rhodes Holdings, LLC, WEM Equity Capital Investments, LTD . |
| 11/07/2013 | | Courtroom Minutes—Transcript Requested, *see* Doc. No. 1092. |
| 11/07/2013 | 464 | Order Requiring the Hurleys and the Dishons to Immediately Produce Quickbooks. |
| 11/11/2013 | 479 | Emergency Motion For An Order Of Civil Contempt Against The Hurleys And The Dishons. |
| 11/13/2013 | 488 | Order Granting Emergency Motion for an Order of Civil Contempt Against the Hurleys and the Dishons. |
| 11/29/2013 | 533 | Notice Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Estate of Digerati Technologies, Inc. Holds a Substantial or Controlling Interest. |
| 01/08/2014 | 658 | Order Granting Application For Compensation. Granting for Hoover Slovacek, LLP, fees awarded: $240,869.00, expenses awarded: $19,017.27. |
| 01/10/2014 | 665 | Amended Chapter 11 Plan Filed by Digerati Technologies, Inc. |
| 01/21/2014 | 685 | Amended Disclosure Statement Filed by Digerati Technologies, Inc. |
| 01/21/2014 | 687 | Order Conditionally Approving First Amended Disclosure Statement, Authorizing Debtor to Solicit |

Exhibit A

| | | |
|---|---|---|
| | | Votes and Setting Confirmation Hearing. Last day to oppose the First Amended Disclosure Statement and Second Amended Chapter 11 Plan is 1/30/2014 at 5:00 PM (CST). |
| 01/29/2014 | 694 | Objection to Confirmation of Plan Filed by American Equity Fund LLC, Scott Hepford, John Howell, William McIlwain, Rainmaker II Ventures, Ltd., Recap Marketing & Consulting LLP, Robert C Rhodes, Rhodes Holdings, LLC, Sonfield & Sonfield, P.C., WEM Equity Capital Investments, LTD. |
| 01/29/2014 | 699 | Amended Objection to Confirmation of Plan Filed by American Equity Fund LLC, Scott Hepford, William McIlwain, Rainmaker II Ventures, Ltd., Recap Marketing & Consulting LLP, Robert C Rhodes, Rhodes Holdings, LLC, Robert L Sonfield Jr, Sonfield & Sonfield, P.C., WEM Equity Capital Investments, LTD. |
| 02/03/2014 | 711 | Emergency Motion To Terminate Exclusivity Or In The Alternative To Appoint A Chapter 11 Trustee. |
| 02/04/2014 | 716 | Response (Filed By Terry Dishon, Hurley Fairview, LLC, Riverfront Capital, LLC, Sheyenne Rae Nelson Hurley ). |
| 02/06/2014 | 731 | Second Amended Chapter 11 Plan Filed by Digerati Technologies, Inc. |
| 02/11/2014 | 739 | Order Denying Confirmation of the Debtor's Second Amended and Restated Plan of Reorganization. The continued confirmation hearing scheduled for 2/18/2014 is cancelled. |
| 02/18/2014 | 749 | Motion for Approval of Selection Process for Independent Director(s) of Debtor and/or Independent Directors of Reorganized Debtor Pursuant to an Amended Plan. |
| 02/19/2014 | 753 | Order Terminating Exclusivity. It is further ORDERED that the Motion to Appoint a Trustee is withdrawn without prejudice to refiling; and it is further ORDERED that the Motion to Reconsider is dismissed for mootness. |
| 03/31/2014 | 788 | Notice of Filing of the Audited Financials of Dishon Disposal, Inc. |
| 03/31/2014 | 789 | Notice of Filing of the Audited Financials of Hurley Enterprises, Inc. |
| 04/04/2014 | | Courtroom Minutes—Transcript Requested, *see* Doc. No. 1085. |
| 04/04/2014 | | Exhibits Returned to Counsel following hearing on 04/04/2014. |
| 04/14/2014 | 803 | Joint Emergency Motion – Trustee's and Reorganized |

3                                                                   **Exhibit A**

| | | Debtor's Emergency Motion to Approve Bidding Procedures for the Auction of Hurley Enterprises, Inc. and Dishon Disposal, Inc. and for Related Relief Filed by Debtor Digerati Technologies, Inc. |
|---|---|---|
| 05/09/2014 | 843 | Objection Application for Compensation. Filed by American Equity Fund LLC, Scott Hepford, John Howell, William McIlwain, Rainmaker II Ventures, Ltd., Recap Marketing & Consulting LLP, Robert C Rhodes, Rhodes Holdings, LLC, Robert L Sonfield Jr, Sonfield & Sonfield, P.C., WEM Equity Capital Investments, LTD. |
| 05/21/2014 | 847 | Memorandum Opinion Regarding Motion of Rhodes Holdings, LLC and Scott Hepford to Determine Authority of Individual Creditors to Pursue Estate Claims Signed on 5/21/2014. |
| 05/22/2014 | 849 | Amended Objection Application for Compensation. Filed by American Equity Fund LLC, Scott Hepford, William McIlwain, Rainmaker II Ventures, Ltd., Recap Marketing & Consulting LLP, Robert C Rhodes, Rhodes Holdings, LLC, Robert L Sonfield Jr, Sonfield & Sonfield, P.C., WEM Equity Capital Investments, LTD. |
| 05/23/2014 | 855 | Response - Hoover Slovacek's Response to the Objection and Amended Objection to Third and Final Application of Debtor's Counsel for Allowance of Compensation and Services and Reimbursement of Expenses. |
| 05/27/2014 | 867 | Memorandum Opinion Regarding Denial of Confirmation of the Debtor's Second Amended and Restated Plan of Reorganization. |
| 05/27/2014 | 874 | Courtroom Minutes—Transcript Requested, *see* Doc. No. 1090. Evidence presented. Hoover Slovacek LLP's exhibits 1-22 and 26 are admitted. Objecting parties' exhibits 8-15, 18, 21-23, 25, 26, 28-53, and 57 are admitted. |
| 07/01/2014 | | Courtroom Minutes—Transcript Requested, *see* Doc. No. 1086. |
| 07/11/2014 | 919 | Order Granting in Part and Denying in Part Debtor's Limited Motion to Amend Factual Findings in the Memorandum Opinion Regarding Denial of the Debtor's Second Amended and Restated Plan of Reorganization. |
| 07/17/2014 | 922 | Notice of Updated Estimated Distribution Chart for Allowed Creditors. |
| 08/28/2014 | 979 | Order Regarding: (1) Examination of Edward L. Rothberg by Lloyd E. Kelley; and (2) Quashing |

Exhibit A

| | | Subpoena Served on Gary M. Jewell. (Related document(s): 831). |
|---|---|---|
| 01/14/2015 | 1058 | Notice of Occurrence of Plan Effective Date. |
| 02/06/2015 | 1083 | Transcript Order Form—Hearing held on 10/02/2013. |
| 02/06/2015 | 1085 | Transcript Order Form—Hearing held on 04/04/2014. |
| 02/06/2015 | 1086 | Transcript Order Form—Hearing held on 07/01/2014. |
| 02/06/2015 | 1092 | Transcript Order Form—Hearing held on 11/07/2013. |

**Exhibit A**